Plaintiff Pro Se

Donald P. Lariviere,

# 3 Devotion Avenue

Sanford, Maine 04073

## IN THE SUPERIOR COURT OF YORK COUNTY
## STATE OF MAINE

Donald P. Lariviere
**Plaintiff**

V.

The Bank of New York as Trustee,
Litton Loan Servicing, LP,
Bank of America,
Mortgage Electronic Registration Systems, Inc. (MERS),
JOHN AND JANE DOES I through XX, inclusive
   Defendants

CIVIL ACTION NO.:
Complaint

RE-11-169

## COMPLAINT

    COMES NOW YOUR Plaintiff, Donald P. Lariviere to sue the defendants for Civil conspiracy to commit fraud and wrongful foreclose; To produce Original Note; Restraining Order; Fraudulent Misrepresentation; Breach of Fiduciary Duty; Unjust Enrichment; Civil Conspiracy; Complaint to Quiet Title to Real Property; Usury and Fraud and Economic Duress in that they have knowingly foreclosed without being the owner of the original note. The plaintiff asserts in good faith that neither the loan and related title to property was ever perfected nor due diligence was done properly.

Plaintiff request an all-out discovery in order to assert his rights on the property in the question and to expose that the defendants who are deliberately dragging the plaintiff in the litigations by a foreclosure of the property in the question of the: 3 Devotion Avenue Sanford, ME 04073, until a full hearing can be held to consider injunctive relief.

It is worth noting that since the loan has been securitized who is the real owner of the property is unknown to all. The plaintiff strongly contest that the parties foreclosed the property are not the viable owner of the property and they have no claim over the property. In



EXHIBIT A

order to confer justice court the court should allow the claim of the plaintiff so that the real owner of the property could be found out.

The plaintiff prays for the reversal of foreclosure and damages for the wrongful foreclosure.

## Parties and Jurisdictions

1. **Donald P.Lariviere ( hereinafter Borrower/ Borrowers/ Plaintiff)** of 3 Devotion Avenue are the Plaintiffs in this action.

2. Defendant MERS is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, Inc. and is acting solely as the nominee for Lender and is the grantee under the Security Instrument.

3. Defendant Litton Loan Servicing, LP is the foreclosing lender who intends to foreclose on the property without having the actual authority.

4. The Bank of New York as Trustees for the certificate holders CWABS Inc Asset Backed Certificate Series 2006-9 are defendants foreclosing without actual athority

5. There are a number of potential Defendants whose names, locations, and capacities are not yet known or understood by the Plaintiffs. As such the Plaintiffs has sued by fictitious names JOHN AND JANE DOES I through XX, inclusive. The Plaintiffs will amend this complaint to allege their true names and capacities when such is ascertained.

## NATURE OF THE ACTION

6. This case is a clear example Defendants' egregious, ongoing and far reaching fraudulent schemes for improper use of the Borrower' identity, negligent and/or intentional misrepresentation of appraised fair market value, fraud by inducement, fraud in execution, usury, and a number of breaches in contractual and fiduciary obligations have occurred by those acting as Mortgagee, Nominee on the Mortgage Deed,

7. The participants in the securitization scheme described herein have devised business plans to reap millions of dollars in profits at the expense of the Plaintiff' real estate asset and other investors in certain trust funds.

8. In addition to seeking compensatory, consequential and other damages, Plaintiff seeks declaratory relief as to what (if any) party, entity or individual or group thereof is the owner of the Mortgage DEED executed at the time of the loan closing, and whether the Mortgage Deed secures any obligation of the Borrower against the Trust property.

9. The Borrower is the nominal payor on the actual mortgage DEED. The Loan Seller is a financial institution that was paid a fee to pose as a residential mortgage lender, when in fact the source of loan funds and the actual lender (Investors in Certificates) and underwriter (Mortgage Aggregator and Investment Banker) were other parties whose identities and receipt of fees and profits were withheld from the Borrower at Closing and these numerous transfers of the NOTE have been accomplished without notice to the Borrower. The present case is a civil action brought with respect to the Subject Property the Borrower was granted a secured loan bearing number 19099316 from First Residential Mortgage Network which was allegedly (though not true) sold to Countrywide (now owned by Bank of America) and then to unknown investors and alleged to have been sold to Litton Loan servicing, which is absolutely false and without any proof which is not acceptable. The Litton is pretending lender though he is acting as a servicer

10. Unknown to Borrower, the Loan Seller, acting as principal in its relationships with the "independent appraiser," the "Mortgage Broker" and the "mortgage originator" induced the Borrower into a transaction that did not and could not meet normal underwriting standards for a residential mortgage. The Loan Seller posed as a conventional mortgage lender thus leading Borrower to reasonably believe that the Loan Seller, the Mortgage Broker, and the Loan Originator had an interest in the success (repayment of the loan) of the transaction that Borrower was executing at the time of the "closing" of the subject loan transaction. The Borrower did not and could not know that the loan they were signing was not necessarily in their best interests but was the loan that was in the Originator's best interest without regard to whether the Borrower could repay the loan. These types of actions are labeled "predatory lending" by Federal Law and can, when proven, invalidate the security interest or even the debt.

11. In fact, neither the Loan Seller, Mortgage Broker, Appraiser, Loan Originator, Title Agent, Closing Attorney and nor the Loan Servicer had any financial stake (i.e., liability) in the lending transaction. Because they had no interest other than obtaining Borrower' signature on a "loan" without regard to the welfare of the Borrower. This motive getting the Borrower to sign the most profitable loan is contrary to representations and assurances from the conspiring participants which were made to the Borrower. All through the process, the Borrower were assured that this transaction was in their best interests and that the participants were looking out for the Borrower' financial well-being. When in fact, all the elements of the loan transaction were

fashioned for the benefit of the Mortgage Originator, Loan Seller, Appraiser and other participating conspirators in this scheme.

12. <u>The Borrower was current on the payments to the actual holder of the Note because of the securitization process or in the alternative that the Lender is responsible for her alleged default.</u> The Lender promulgated a scheme which, for any other individual, would be illegal loan flipping. The Lender sitting at the closing table had no money to lend. The Note was a sham and the Security Deed was pledged to secure nothing. The Lender, unknowingly to the Borrower, solicited this Note without having money to lend, and then would in turn sell this deed to an unknown entity who would fund the deal. This scheme was never revealed to the Borrower. As a result, the Borrower has never known who was the real Lender, has never had contact with the real Lender, and cannot give Notice to the real lender by means outlined in the Mortgage Deed because it requires notice be served upon a lender who is unknown to the Borrower from the beginning until now.

13. The Borrower relied upon the due diligence of the apparent "Lender/Mortgage Broker" (i.e., actually the Loan Seller) in executing and accepting the closing documents. In fact, no "lender" was involved in the closing in the sense of an entity performing due diligence and evaluation pursuant to national standards for underwriting and evaluating risk of loaning money in a residential loan closing. The loan was chosen for the benefit of the "lending" entities and not for that of the Borrower even though they were continually assured that this was sound financial advice.

### Who owns the Note and Deed?

14. Lenders, or holders of mortgages or Security Deeds, are allowed to and often do assign/sell mortgages and Deeds to other lenders, or third parties. When this is done the assignee (person who received the assignment) steps into the place of the original lender or assignor.

15. First Residential Mortgage Network Inc. was named as the Lender on the subject Mortgage Deed and MERS Inc. was the beneficiary under the mortgage terms allegedly securing the performance under the subject note. In accordance with State law, the Deed and terms of security were recorded in the county records.

16. Bank of New York as Trustee, filed with the District Court a Civil Action seeking a judgment of foreclosure filed on 10 September 2007

17. <u>Notice of Default was served by Bank of New York upon Plaintiff as on May 29, 2007.</u> Interestingly the <u>Deed of assignment was made as on August 21, 2007 between MERS</u>

Inc. and Bank of New York. It clearly proves that the Foreclosing Lender had no right vested upon him to initiate a fraudulent foreclosure, as they had no vested interest in the Deed and every act done by them prior to assignment shall be construed as fraud.

18. Can MERS act both as an agent and principle in the deed? Does this mean that MERS really *was* the mortgagee, even though it didn't lend money or have any rights to loan repayments? "MERS involvement in the mortgage lending industry suggests that MERS is not a mortgagee with respect to any loan registered on its database. A mortgagee is simply the party to whom a parcel of real estate is mortgaged. Or, as Black's Law Dictionary explains, a "mortgagee" is "one to whom property is mortgaged; the mortgage creditor, or lender. -- Also termed as *mortgage-holder*."

19. As MERS Inc. was a nominee how is it that he can transfer or assign deed to any person he likes. A transfer must be made by the Actual Lender and MERS Inc. is not a lender and has no legal standing to assign deed or initiate foreclosure proceeding. MERS is not the party to whom home was mortgaged for at least three fundamental economic reasons.

    1) MERS does not fund any loans. No money coming out of a MERS deposit account is tendered as loan principal to homeowners.

    2) No homeowners promise to pay MERS any money. To this effect, MERS is never identified as the payee in a promissory note and MERS is never entitled to receive any monthly payments from the mortgagor.

    3) MERS is never entitled to receive the proceeds of a foreclosure sale. Instead, these funds go to the actual Lender who owns the note

**Landmark Nat'l Bank v. Kessler 261 Kansas 618 (2009)** finding that a nominee could only hold "bare legal title for the benefit of another" and the court quoted the Missouri Supreme Court in finding that, "[B]ecause MERS was not the original holder of the promissory note and because the record contained no evidence that the original holder of the note authorized MERS to transfer the note, the language of the assignment purporting to transfer the promissory note was ineffective."MERS never held the promissory note, thus its assignment of the deed of trust to Ocwen separate from the note had no force." 284 S.W.3d at 624; see also In re Wilhelm, 407 B.R. 392 (Bankr. D. Idaho 2009) (standard mortgage note language does not expressly or implicitly authorize MERS to transfer the note); In re Vargas, 396 B.R. 511, 517 (Bankr. C.D. Cal. 2008).

20. Further the Plaintiff was not provided with any notices regarding assignment of the deed despite several requests. The covenants as agreed by the parties to the mortgage did say that no prior notice will be given to the Borrower. But it nowhere mentioned that no notice will be given even after of sale or assignment of deed.

21. The Plaintiff does not know who shall be treated as the Actual Lender and demands that actual "note" must be produced in the court so that it may be clearer that the foreclosure

has been undertaken by Actual Lender and not a party with an inferior copy of the Note by mistake or fraud.

The Security deed contains a provision under Transfer of Rights in the property; that states that "The note or a partial interest in the note can be sold one or more times without prior notice to Borrower." But there was no intimation to the Borrower regarding sale of the "note" after such sale. The Clause does not allow that no information will be given to the Borrower regarding any sale. The Defendants have shipped the Note around without notice to the Borrower and more importantly without wet signatures on the Note or successive recordings in the County office of Records and Deeds. As a result the Borrower is left with no means by which to ascertain who has the right to declare the Note in Default and execute the Security Deed. This is clearly a fraudulent scheme to keep the Borrower unaware of the facts. The Plaintiff must know the owner of the note in order to properly pay and account for that note. Since there are no recordations of those Note transfers, the true holder of the Note must come forth with the Original Note with an unbroken string of wet signatures to show rightful ownership.

22. Plaintiff alleges that the Defendants have acted in concert to commit constructive fraud against the Borrower and as a result of their fraud they threaten their rightful ownership of the property. Each of the Defendants were engaged in an artifice or scheme whose purpose was to execute loans secured by real property in order to make commissions, kick-backs, undisclosed yield spread premiums, and undisclosed profits by the sale of any instruments arising out of the transaction. Plaintiff alleges that each Defendant has represented to the Borrower and to third parties that they were the owner of the Mortgage Deed and Note as either the Trustee or the Beneficiary regarding Plaintiff real property. Based upon this representation they caused a Notice of Default to be issued to the Borrower without disclosing their true role, and thereafter a notice of intent to foreclose was published. Possession of the Note is not incidental to the right to foreclose, it is absolutely necessary.

23. Thus, no bank or other financial institution actually performing under the standards, rules and regulations governing such institutions was the "lender" which is the basis for Plaintiff' cause of action for usury, fraud, and wrongful foreclosure to wit: that the inflated appraisal added an undisclosed cost to the loan which when added to the other terms, disclosed and undisclosed, and amortized over the real expected life of the "loan" exceeds the limits set by the State legislature for usury and is not subject to exemption because the presence of a financial institution in the transaction was a ruse in which the form of the transaction covered over and mislead the Borrower as to the real parties in interest and the fees generated by the production of the subject "loan transaction."

24. Their purpose was solely to collect fees, rebates, kickbacks and profits that were never disclosed to Borrower and have only recently been discovered by Borrower through consultation with experts in securitization of residential mortgage loans, and diligent

research including the filings of some parties with the Securities and Exchange Commission which disclose the normal manner of operating this fraudulent scheme.

25. <u>The Foreclosing Lender is responsible for the bad acts of its predecessors.</u> It is not a defense on the part of the Foreclosing Lender to say: "We may be holding an asset created by the predatory lending actions of the original lender and broker but we are not responsible for their actions since we were not party to those actions." They cannot take a flawed asset and enjoy the benefit of it as if it is not flawed. Willful ignorance does not relieve them of the fact that they are holding an asset that was created in an atmosphere of fraud, deceit, and recklessness. When the broker induces or causes the Borrower to take a loan because it is easy for the broker and not better for the Borrower then the Borrower has been duped. When the lender makes a loan where no income has been verified they are WILLFULLY IGNORANT of the Borrower' ability to pay for the loan and cannot then hold the Borrower responsible for taking a bad loan that they do not fully understand. Loan documents are a contract of adhesion and therefore the lender bears the primary responsibility of knowing that the loan is a good and payable loan. Further the foreclosing lender can not ignore the break in the chain of collateral that supposedly secures the NOTE. **The purchaser of a bad loan is the OWNER of a bad loan.**

## GENERAL ALLEGATIONS

26. The end result of the false and misleading representations and material omissions of Defendants as to the true nature of the mortgage loan actually being processed, which the said Defendants had actual knowledge was in direct conflict with the original Uniform Residential Loan Application, early TIL, and Borrower' stated intentions and directions to said Defendants at the time of original application for the loan, fraudulently caused Borrower to execute predatory loan documents.

27. At no time whatsoever did Defendants ever advise Borrower (nor, as far as Borrower can determine, any "investor" in certificates of mortgage-backed securities) that: a) The mortgage loan being processed was not in their best interest; b) the terms of the mortgage loan being processed were less favorable than the fixed-rate loan, which Defendants previously advised Borrower that they qualified for; c) that the mortgage loan was an inter-temporal transaction (transaction where terms, risks, or provisions at the commencement of the transaction differ at a later time) on which Borrower was providing cover for Defendants' illegal activities.

28. That Borrower would likely be placed in a position of default, foreclosure, and deficiency judgment regardless of whether they met their loan obligations once the true lender or true holder(s) in due course appeared;

29. That the originating "lender", and/or undisclosed third parties, had no intention of retaining ownership interest in the mortgage loan or fully servicing same and in fact may have and probably had already pre-sold the loan, prior to closing, to a third party mortgage aggregator pursuant to previously executed documentation Assumption and Assignment Agreement, Pooling Services Agreement, etc. all executed prior to Borrower' "loan Closing."

30. That the mortgage loan was actually intended to be repeatedly sold and assigned to multiple third parties, including one or more mortgage aggregators and investment bankers for the ultimate purpose of bundling the Borrower' mortgage with hundreds or perhaps thousands of others as part of a companion, support, or other tranche in connection with the creation of a REMIC security known as a Collateralized Mortgage Obligation ("CMO"), also known as a "mortgage-backed security" to be sold by a securities firm (and which in fact ended up as collateral for Asset-Backed Securities Certificates, created the same year as the closing);

31. That the mortgage instrument and Promissory Note may be sold, transferred, or assigned separately to separate third parties so that the later "holder" of the Promissory Note may not be in privity with or have the legal right to foreclose in the event of default;

32. That in connection with the multiple down line resale and assignment of the mortgage and Promissory Note that assignees or purchasers of the Note may make "pay-downs" against the Note which may affect the true amount owed by the Borrower on the Note;

33. That a successive assignee or purchaser of the Note and Mortgage may not, upon assignment or purchase, unilaterally impose property insurance requirements different from those imposed as a condition of the original loan (also known as prohibition against increased forced-placed coverage) without the Borrower' prior notice and consent;

34. As a result of the closing and in connection therewith, Defendants placed the Borrower into a pool of a sub-prime adjustable rate mortgage programs, with Defendants intentionally misleading Borrower and the other Borrower and engaging in material omissions by failing to disclose to v and other Borrower the fact that the nature of the mortgage loan applications had been materially changed without Borrower' knowledge or consent, and that Borrower was being placed into a pool where the usual

loan was an adjustable rate mortgage program despite Borrower not being fully qualified for such a program.

35. Defendants engaged in a pattern and practice of defrauding Borrower in that, during the entire life of the mortgage loan, Defendants failed to properly credit payments made; incorrectly calculated interest on the accounts; and have failed to accurately debit fees.

36. Defendants had actual knowledge that the Borrower' accounts were not accurate but that Borrower' would make further payments based on Defendants' inaccurate accounts.

37. Borrower made payments based on the improper, inaccurate, and fraudulent representations as to Borrower' accounts.

38. As a direct and proximate result of the actions of the Defendants set forth above, Borrower overpaid in interest.

39. Defendants also utilized amounts known to the Defendants to be inaccurate to determine the amount allegedly due and owing for purposes of foreclosure.

40. Defendants' violations were all material in nature under the Truth-In-Lending Act.

41. Said violations, in addition to the fact that Plaintiff did not properly receive Notices of Right to Cancel, constitute violations of 15 USC sec. 1635(a) and (b) and 12 CFR sec. 226.23(b), and are thus a legal basis for and legally extend Plaintiff' right to exercise the remedy of rescission.

42. Defendants assigned or attempted to assign the Note and mortgage to parties who did not take these instruments in good faith or without notice that the instruments were invalid or that Borrower had a claim in recoupment. Pursuant to ORC sec. 1303.32(A) (2) (b) (c) and (f), Defendants are not a holder in due course and is thus liable to Borrower, individually, jointly and severally.

43. On information and belief and given that the consumer credit transaction was an intertemporal transaction with multiple assignments as part of an aggregation and the creation of a REMIC tranche itself a part of a predetermined and identifiable CMO, all Defendants shared in the illegal proceeds of the transaction; conspired with each other to defraud the Borrower out of the proceeds of the loan; acted in concert to wrongfully deprive the Borrower of their residence; acted in concert and conspiracy to essentially steal the Borrower' home and/or convert the Plaintiff' subject property without providing Borrower reasonably equivalent value in exchange; and conducted an illegal enterprise within the meaning of the RICO statute. On information and belief and given the volume of residential loan transactions solicited and processed by the Defendants, the Defendants have engaged in two or more instances of racketeering activity involving

different victims but utilizing the same method, means, mode, operation, and enterprise with the same intended result.

## CLAIMS FOR RELIEF

## COUNT I

## TO PRODUCE ORIGINAL NOTE

44. Plaintiff reaffirms and alleges the above paragraphs 1-43 hereinabove as if set forth more fully herein below.

45. Since there was no proper recording relating to sale of the "Note," it is difficult to believe that the foreclosing lender is the actual lender. The Borrower has never contracted to pay the Servicer a penny. While the Security Deed has been purportedly assigned around, there is no evidence that the Note has gone with it. If the Borrower owes anyone it is the original lender.

46. The Defendants have failed to deliver any notices relating to sale and therefore the Plaintiff requests for proper notice relating to sale of note and for production of actual "note" in the court so that it may be proved that the foreclosing lender is the actual lender and has standing to foreclose.

47. The Plaintiff denies that the Borrower owes the Lender, MERS, or the Servicer any money therefore the Note is not in default and the foreclosure is was illegitimate.

## COUNT II

## FRAUDULENT MISREPRESENTATION

As against Defendants Litton Loan Servicing, LP; Mortgage Electronic Registration Systems, Inc. (MERS); Bank of New York

48. Plaintiff reaffirm and realign paragraphs 1-43 above as if set forth more fully herein below.

49. The Defendants, each and every one, have participated in a Constructive or Malicious Fraud from the beginning of this transaction. From the inducement of the Plaintiff to accept a predatory loan with terms and conditions that were destined to cause a default purportedly by the Plaintiff, to transfers of the note and Deed which were not contemplated by the agreement or disclosed by the parties, to a securitization process which illegally uses and exploits the Plaintiff' name and credit for the benefit of the Defendants. The Defendants, have participated in this scheme of unjust enrichment at the Plaintiff' expense.

50. Defendants knowingly and intentionally concealed material information from Plaintiff which is required by Federal Statutes and Regulations to be disclosed to the Plaintiff both before and at the closing.

51. The most important fact or evidence for proving misrepresentation are the Exhibits C and D. <u>Exhibit C is a civil action</u> filed by Defendant Bank of New York as Trustee as on 10 September 2007. The Para in the Civil action says that the <u>Notice of Default was served upon Plaintiff as on May 29, 2007. Whereas Exhibit D clearly shows that the assignment was made between Defendants Bank of New York and Defendant MERS as on August 21, 2007.</u>

Before even assignment, can a Bank act as a lender and initiate foreclosing procedure. Can they serve a notice of Default upon Borrower? Does that possibly mean that every unknown party can initiate foreclosure procedure and for validating their act, MERS can later assign the DEED?

52. The Defendants also materially misrepresented material information to the Plaintiff with full knowledge by that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made. RESPA letters were sent to every known defendant. But Defendant Litton Loan Servicing, LP hardly sent any details relating to assignment. They simply sent the copies of original deed between the borrower and Plaintiff and stated that there is no error or fraud in the Deed. However, there was an assignment which shows that a Party (Defendant Bank of New York) has acted as a foreclosing lender without proper assignment.

53. Under the circumstances, the material omissions and material misrepresentations of the Defendants were malicious. They even failed to provide with the Plaintiff proper notices as to assignment of the deed.

55. Plaintiff, not being an investment banker, securities dealer, mortgage lender, mortgage broker, or mortgage lender, reasonably relied upon the representations of the Defendants in agreeing to execute the mortgage loan documents.

56. Had the falsity of Defendants' representations known to the Plaintiff, they would not have entered into the transactions the subject of this action.

57. As a direct and proximate cause of the Defendants' material omissions and material misrepresentations, Plaintiff has suffered damages.

58. The Plaintiff prays for appropriate damages and demand that the foreclosure proceeding initiated by the fraudulent syndicate of each defendant be deemed void and should be duly reversed.

## RELIEF SOUGHT

WHEREFORE, having set forth numerous legally sufficient causes of actions against the Defendants, Plaintiff pray for the entry of Final Judgment against all Defendants jointly and severally in an amount not yet quantified but to be proven at trial and such other amounts to be proven at trial, and for costs and attorneys' fees; that the Court finds that the transactions the subject of this action are illegal and are deemed void; that the foreclosure which was instituted be deemed and declared illegal and void and that further proceedings in connection with the foreclosure be enjoined; and for any other and further relief which is just and proper. The Plaintiff further prays that the defendants be enjoined from the auction/trustee sale of the property concerned, and a permanent injunction against lender may be granted to prevent the auction sale of the concerned property.

Realleging his claim the Plaintiff prays a discovery in order to assert his rights on the property in the question and to expose that the defendants who are deliberately dragging the plaintiff in the litigations by a foreclosure of the property in the question of the: 3 Devotion Avenue Sanford, ME 04073, until a full hearing can be held to consider injunctive relief.

The plaintiff also prays for the reverse foreclosure and damages for the wrongful foreclosure.

## DEMAND FOR JURY TRIAL

Plaintiff demand trial by jury of all matters as triable as a matter of right.

Respectfully submitted,

Dated: August 10, 2011

*Donald P Lariviere*

Donald P. Lariviere # 3 Devotion Avenue

Sanford, Maine 04073

Plaintiff Pro Se